LYONS, Justice
(concurring in case no. 1010525 and dissenting in case no. 1010342).
I dissent from the majority’s decision to affirm the trial court’s judgment without opinion in case no. 1010342.
In 1982, a group of physicians from Medical Center East, Inc., a subsidiary of Eastern Health System, Inc. (“EHS”), and Eastside Development, Inc. (“Eastside”), formed a limited partnership known as Medical Plaza East, Ltd. (“the Partnership”), in which Eastside would serve as both limited partner and general partner. The Partnership was formed for the purpose of funding the construction of a professional office building. In forming the Partnership, the limited partners made capital contributions to the Partnership,[1] and both the limited partners and the general partner executed a partnership agreement to govern the rights and duties of the partners.
The Partnership continued in its original form until 1996, when a majority of the limited partners, in compliance with the partnership agreement, voted to remove Eastside as general partner. Section 14.1(d) of the partnership agreement lists removal of the general partner as a specific event of dissolution of the limited partnership. However, § 14.2 allows the Partnership to avoid dissolution if the limited partners vote unanimously to reform the Partnership and to appoint a new general partner within 30 days of the removal of the previous general partner.[2] The limited partners who were physicians attempted to use § 14.2 to appoint Medical Plaza East, POB, LLC (“the LLC”), as the new general partner. Eastside defeated this effort by voting as a limited partner to prevent reformation. Consequently, dissolution of the Partnership commenced. The physician limited partners then selected the LLC as the Partnership’s special liquidator for dissolution, as required by § 14.3 upon the removal of a general partner. After its appointment, the LLC began the dissolution of the Partnership. The litigation in this case began at that time.
The procedural history of the numerous claims, judgments, and appeals between *98 1996 and the present is extensive and complex. However, the scope of this dissent requires discussion of only the issues relevant to the present appeal. On November 14, 2000, the trial court entered an order concluding that Eastside was not entitled, as the former general partner, to a distribution of the Partnership assets from the liquidation, under its interpretation of § 14.3 of the Partnership Agreement.[3] The trial court concluded that the partnership agreement did “not clearly address the issue of distribution of assets where the General Partner has been removed.” The trial court found that § 14.3 and § 8.3 “do not entitle a former General Partner to distribution at the time of dissolution.” Eastside and EHS appealed, arguing four issues, one of which is that § 14.3 and § 8.3[4] of the partnership agreement provide for distribution of Partnership assets to a removed general partner upon dissolution of the Partnership.
One might argue that § 14.2 provides authority for the conclusion that the drafters of the partnership agreement would have used the phrase “removed General Partner” in § 14.3 if they had intended the references to “the General Partner” in § 14.3 to include a removed general partner in the context of a right to participate in distribution of the proceeds upon dissolution. However, § 14.2, which describes what happens upon the removal of the general partner, does not consistently refer to a general partner who has been removed as a “removed general partner.” Section 14.2 refers to a removed general partner as simply “the General Partner” when dealing with the closely related issue of compensating a removed general part *99 ner for its interest upon reformation. Consequently, § 14.2 is not authority for reading § 14.3 as excluding a removed general partner when the phrase “General Partner” is used in § 14.3.
One might point to the buyout provision applicable to a removed general partner on reformation, arguing that Eastside takes nothing because it made no capital contribution and, thus, because it did not invest originally as general partner, it therefore held no percentage of the value of the partnership in that capacity. From this, one might conclude that a removed general partner takes nothing on reformation and thus a similar result on dissolution under § 14.3 is defensible. I disagree. The partnership agreement cannot be interpreted to provide nothing to a removed general partner on reformation. Section 8.1 provides that, in the general allocation of profits, the limited partners are entitled to 95% of the profits and the general partner 5% of the profits until the limited partners recoup their capital contributions.[5] At that point, the general partner is entitled to 20% of the profits. A removed general partner would thus hold at least a 5% interest, and at most, a 20% interest in the partnership. Upon reformation, pursuant to § 14.2, it would receive a percentage of fair market value “of the General Partner’s interest in the Partnership” based upon the status of the limited partners’ recoupment of contributions. To hold otherwise attributes to the drafters of the partnership agreement an intent to include a meaningless formula in § 14.2 for compensation of a removed general partner, because they are charged with knowledge that the partnership agreement did not require a capital contribution from the general partner.
The formula for payment to the general partner on dissolution under § 14.3 is essentially the same as previously outlined with reference to § 14.2. The general partner is entitled to 20% of excess value of the partnership after each limited partner has been made whole for his or her capital contribution. This scheme matches the provision for the distribution of profits in § 8.1. Under § 14.2 and § 14.3, the general partner, either removed or otherwise, shares to the same extent in a buyout under reformation, distribution, or dissolution.
I must therefore respectfully dissent from the majority’s affirmance of the trial court’s conclusion that, pursuant to § 14.3 of the partnership agreement, Eastside is *100 not entitled to any distribution of profits upon the dissolution of the Partnership.
HOUSTON, JOHNSTONE, and WOODALL, JJ., concur.

. As the general partner, Eastside did not make any capital contribution to the Partnership.

. Section 14.2 reads as follows:
" § 14.2 Reformation of Limited Partnership Under Certain Circumstances: If at any time there is no General Partner in office as a result of the removal, resignation, retirement, death or bankruptcy, insolvency, insanity or mental incapacity of all General Partner[s], the remaining Partners may unanimously vote to reform the Partnership and elect one or more successor general partners to continue the business of the Partnership.... In the event of such reformation, the successor General Partner(s) shall continue the business of the Partnership, in a reconstituted form as a successor limited partnership, upon the same terms and conditions as are set forth in this Certificate and Agreement.... In connection with any removal pursuant to Section 14.1 ..., the successor General Partner(s) shall either purchase the interest(s) in the Partnership of his or her predecessor(s) at a price equal to the amount in the General Partner's capital account in the Partnership and the fair market value of the General Partner's interest in the Partnership as of the date of such removal or occurrence or other event or cause the Partnership to purchase such interest(s) in the Partnership with payment under either such alternative to [be] made in cash no later than the 60th day following the receipt of notice by the removed General Partner required by Section 12.2 hereof. The determination as to such value shall be made as provided below. If the previous General Partner (or his successor in interest) and the successor General Partner shall fail to agree as to the value of the interest of the previous General Partner, such value shall be determined by arbitration...."

. Section 14.3 reads as follows:
" § 14.3 Dissolution and Winding Up: In the event of a dissolution of the Partnership in accordance with Section 14.1(a), (b) or (c) above, the General Partner (or in the event of a dissolution in accordance with Section 14.1(d) or other case in which the General Partner fails or refuses to act, a special liquidator appointed by a majority in interest of Limited Partners) shall immediately commence to wind up the affairs of the Partnership and shall liquidate the assets of the Partnership as promptly as possible, but in an orderly and business-like manner so as not to involve undue sacrifice .... The proceeds of liquidation, and the remaining assets, if any, shall be applied and distributed in the following order of priority:
[[Image here]]
"(f) to the General Partner[s] in accordance with their respective interest in any Partnership distribution as provided in Section 8.3 hereof.”

. Section 8.3 reads as follows:
§ 8.3 Refinancing or Sale of Partnership Property: The General Partner shall distribute, as soon as practicable after receipt thereof by the Partnership, all or any portion of the Partnership’s share of the proceeds (hereinafter referred to as 'Sale or Refinancing Proceeds') from any sale, exchange, foreclosure or abandonment, or refinancing of the Project or any portion thereof. Of such Sale or Refinancing Proceeds, (1) one hundred percent (100%) thereof shall be distributed to the Partners, in proportion to each such Partner’s Net Capital Contribution to the Partnership until each Partner has received an amount equal to one hundred percent (100%) of his Net Capital Contributions (as such term is hereinafter defined) to the Partnership provided that the General Partner shall receive at least one percent (1%) of the Sales or Refinancing Proceeds in any event, and (2) thereafter, any remaining excess of such Sale or Refinancing Proceeds shall be distributed eighty percent (80%) thereof to the Limited Partners, and twenty percent (20%) thereof to the General Partner. If total distributed Sales Proceeds are insufficient to return to Partners an amount equal to one hundred percent (100%) of their Net Capital Contributions, the difference from the proceeds of such sale, shall thereafter constitute the amount of their Net Capital Contributions for the purpose of allocating further distributions of Sales or Refinancing Proceeds among the Partners and the General Partner....”

. Section 8.1 reads as follows:
"§ 8.1 Allocation of Profits and Losses: Profits and losses of the Partnership shall be shared by the Partners as herein specified without regard to the amounts in their respective capital accounts.... [T]he determination of each Partner's distributive share of any Partnership item of income, gain, loss, deduction, credit or allowance for any Partnership accounting period shall be made in accordance with the following allocations:
"(a) to the Limited Partners, collectively, ninety-five percent (95%) of the Partnership’s profits and losses shall be allocated among them on a pro rata basis according to the number of Capital Units held by each Partner; until such time as the distributions of net cash to the Partners equal the sum of the amount of the Partner’s aggregate cash contributions to the Partnership less any previous distributions made to the Partners and thereafter eighty percent (80%) of such profits and losses shall be allocated to the Partners; and
"(b) to the General Partner, five percent (5%) of the Partnership’s profits and losses shall be allocated to it until such time as the Partners have received the amount specified in subpart (a) above, thereafter twenty percent (20%) of the Partnership’s profits and losses shall be allocated to the General Partner.”